|   |   |
|---|---|
| **LUIS GONZALEZ CABAN, et al,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**JR SEAFOOD, INTEGRAND INSURANCE COMPANY, PACKERS PROVISIONS OF PUERTO RICO INC., RAMÓN GUTIÉRREZ, EVARISTO RIVERA BERRIOS D/B/A RESTAURANTE EL NUEVO AMANECER, AND COOPERATIVA DE SEGUROS MÚLTIPLES**<br><br>**Defendants.** | **CIVIL NO. 14-1507 (GAG)** |

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

## OPINION AND ORDER

Luis González Cabán ("González") and other family members,[1] filed this action against JR Seafood Inc., Integrand Insurance Company, Packers Provisions of Puerto Rico Inc. ("Packers"), Ramón Gutiérrez, Evaristo Rivera Berrios d/b/a Restaurante El Nuevo Amanecer ("Restaurante el Nuevo Amanecer"), and Cooperativa de Seguros Múltiples (collectively "Defendants") seeking to hold them liable for Plaintiffs' damages allegedly caused by Defendants' negligent acts as importers, sellers, distributors and/or packager of seafood.

Plaintiffs' claims arise from the following alleged incident. After consuming a shrimp contaminated with saxitoxin at Restaurante El Nuevo Amanecer, in Coamo, Puerto Rico on February

---

[1] González's father, Braulio González Reyes, and González's daughters, Jenifer González Maldonado and Arlene González Soto, are also named Plaintiffs seeking compensatory damages for the emotional distress suffered as a result of González's intense physical and emotional damages. (Docket No. 86-1.)

19, 2004, Plaintiff Gonzalez suffered paralytic shellfish poisoning that permanently deteriorated his health to the point of incomplete quadriplegia/ (Docket No. 86-1.) Plaintiff was taken to the hospital where he remained in critical condition for various days. <u>Id.</u> at 3, ¶ 3. After he was stabilized, he began a long recovery process that included painful and difficult therapeutic treatment. (Docket No. 86-1 at 3, ¶ 3.) Plaintiff was unable to completely recuperate his health. <u>Id.</u> He was diagnosed with incomplete quadriplegia and remains permanently bound to a wheelchair. <u>Id.</u> He only regained limited mobility in his arms and hands. <u>Id.</u> González has no bladder control, no sphincter control and has lost all sexual desire and capacity. <u>Id.</u> Plaintiff alleges that after being treated in hospitals in Puerto Rico as well as in the United States mainland, medical experts determined that his deteriorated health condition was "caused by Paralytic Shellfish Poisoning from the shrimp he ate on February 19, 2004." (<u>Id.</u> at 3, ¶ 4.) The poisoning allegedly occurred from consuming a shrimp that contained saxitoxin, a natural toxin that encapsulated in the shrimp's "viscera" (the intestine). <u>Id.</u>

Plaintiffs claim strict liability, alleging that the shrimp was a defective product and that Defendants, "as sellers, distributors and/or packagers of the defective product, and their respective insurance companies, are liable under the product liability principles of Puerto Rico tort law." (Docket No. 86-1.) Plaintiffs invoked the strict liability doctrine under the principles of failure to warn about the product's defect and implied warranty. <u>Id.</u> Plaintiffs also claim liability under Puerto Rico's general tort statute, Article 1802 of the Puerto Rico Civil Code ("Article 1802"), P.R. LAWS ANN. tit. 32, § 5142, they assert Defendants were negligent by failing to take "all necessary precautions to detect, discard or clean the [contaminated] shrimp," and other local law claims. (Docket No. 86-1.)

Earlier in the litigation Defendants moved to dismiss the complaint, arguing that: (1) Plaintiffs' complaint failed to sufficiently allege the application of the strict liability doctrine to this

case; and (2) Plaintiffs failed to establish that Defendants, as part of the supply chain of the allegedly contaminated shrimp, had a duty to perform tests to detect the presence of saxitoxin. (Docket No. 60.)

On September 11, 2015 the Court turned to Puerto Rico's highest court to answer an unsettled question of Puerto Rico law that arose in this case. In an extensive Opinion, Order and Certification, the Court stressed that there was no local precedent to guide its Court's ruling and that the question certified was vital to the resolution of this case. Gonzalez Caban v. JR Seafood, 132 F. Supp. 3d 274 (D.P.R. 2015). The Court certified to the Puerto Rico Supreme Court the following questions:

> Under the principles of product liability, is a supplier/seller strictly liable for the damages caused by human consumption of an extremely poisonous natural toxin found in a shrimp, even if said food product (and its "defect") are not a result of manufacturing or fabrication process?
>
> If the previous question is answered in the affirmative, would it make a difference if the "defect" of the food product is readily discoverable scientifically or otherwise?

(Docket No. 198.) The Puerto Rico Supreme Court accepted this Court's request for certification. (Docket No. 271). On December 1, 2017, it answered in the negative the Court's certified question of law, holding that a shrimp contaminated with saxitoxin did not trigger the application of the strict liability doctrine. Gonzalez Caban v. JR Seafood, 199 P.R. Dec. 234, --- P.R. Offic. Trans.--- (2017). The Puerto Rico Supreme Court reasoned that the case at bar falls outside of the scope of the strict liability doctrine's protection because the allegedly contaminated shrimp was not manufactured, that is, that the products became contaminated without human intervention. Correspondingly, the Court dismissed Plaintiff's strict liability claims. (Docket No. 306).

Pending before the Court are three motions for summary judgment filed by Cooperativa de Seguros Multiples and Evaristo Rivera Berrios d/b/a El Nuevo Amanecer, Integrand Assurance Company (as insurer of Defendant JR Seafoods) and Defendant Packers Provisions at Docket No.

Nos. 356, 359 and 364, respectively). After reviewing the parties' submissions and pertinent law, the Court **GRANTS** Defendants' motions for summary judgment.

I. **Standard of Review**

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); see FED. R. CIV. P. 56(a). "An issue is genuine if 'it may reasonably be resolved in favor of either party' at trial, . . . and material if it 'possess[es] the capacity to sway the outcome of the litigation under the applicable law.'" Iverson v. City of Boston, 452 F.3d 94, 98 (1st Cir. 2006) (alteration in original) (internal citations omitted).

The moving party bears the initial burden of demonstrating the lack of evidence to support the non-moving party's case. Celotex, 477 U.S. at 325. "The burden then shifts to the nonmovant to establish the existence of at least one fact issue which is both genuine and material." Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 581 (1st Cir. 1994). The nonmovant may establish a fact is genuinely in dispute by citing particular evidence in the record or showing that either the materials cited by the movant "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1)(B). If the Court finds that a genuine issue of material fact remains, the resolution of which could affect the outcome of the case, then the Court must deny summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

When considering a motion for summary judgment, the Court must view the evidence in the light most favorable to the nonmoving party and give that party the benefit of any and all reasonable inferences. Id. at 255. Moreover, at the summary judgment stage, the Court does not make credibility determinations or weigh the evidence. Id. Summary judgment may be appropriate,

however, if the nonmoving party's case rests merely upon "conclusory allegations, improbable inferences, and unsupported speculation." Forestier Fradera v. Municipality of Mayaguez, 440 F.3d 17, 21 (1st Cir. 2006) (quoting Benoit v. Tech. Mfg. Corp., 331 F.3d 166, 173 (1st Cir. 2003)).

## II.  Relevant Factual Background

The Court states the facts in the light most favorable to Plaintiffs, the nonmovant. See Anderson, 477 U.S. at 255. Unless otherwise noted, the facts are not disputed by the parties for summary judgment purposes. See L. CV. R. 56(e) (properly supported facts deemed admitted for summary judgment, unless properly controverted).

On February 19, 2005, Plaintiff Luis González-Cabán and Ilka Soto, went to Restaurant El Nuevo Amanecer. (Docket Nos. 365 ¶ 23; 378-1 at 17 ¶ 23). According to González, at the restaurant he ordered a plate of appetizers that included "fried chicken pieces, some tostones", "mini beef turnovers, cornmeal fritters, mini cordon bleu chicken breasts and jumbo shrimp". (Docket No. 365 ¶ 24). After eating the shrimp, González felt ill, he was taken to a hospital, and eventually became paralyzed. (Docket No. 365 ¶ 29).

Paralytic Shellfish Poisoning is an "illness caused by consuming shellfish contaminated with certain dinoflagellates that produce saxitoxin and other toxins." Some of its symptoms include "numbness or tingling in the face, lips, tongue, and extremities. There may also be a headache, fever, rash, nausea, and vomiting, with impaired coordination, changes in mental status, incoherent speech, and difficulty in swallowing, flaccid paralysis, and respiratory failure in severe cases. Death can occur within two hours of ingestion of the contaminated fish." (Docket Nos. 365 ¶ 1; 378-1 at 10 ¶ 1). The shrimp eaten by Plaintiff was not tested for Saxitoxin nor Paralytic Shellfish Poisoning before or after ingestion. (Docket No. 365 ¶ 34). Plaintiff himself was not tested for Saxitoxin nor Paralytic Shellfish Poisoning before or after ingestion. (Docket No. 365 ¶ 35).

### III. Legal Analysis

Defendant Cooperativa moves for summary judgment arguing that Plaintiffs' evidence is insufficient to support their negligence claims. (Docket No. 358). Similarly, Defendant Integrand Assurance, as insurer of JR Seafood, moves for summary judgment, arguing that Plaintiffs cannot prove the requisite causal nexus between the importation of shrimp and Plaintiffs' injuries. (Docket No. 359). Along the same lines, Packers too moves for summary judgment, alleging Plaintiffs evidence is insufficient to support their general tort claim. (Docket No. 364).

Plaintiffs argue there are genuine issues of material fact that preclude summary judgment. Plaintiffs contend that "[t]he implemented practice is for processors, distributors and sellers in the food industry to "look backward" at the food safety record and practices of the harvester of the food, as part of their "obligation" to ensure that the "food is safe". This is a good food safety practice." (Docket No. 378-1 ¶ 19). Furthermore, they posit that: "[t]he farmers, processors and buyers share responsibility for the quality and safety of shrimp. Due to market regulatory expectations, the processer usually assumes continuous responsibility from production to final sale". (Docket No. 378-1 ¶ 20). Namely, Plaintiffs contend:

> **[T]his case is about the importance of buyers and resellers of shrimp or fish products to look back at the records of the harvester and previous sellers to ensure quality, <u>instead of buying food for resale in the blind</u>. <u>The commercial purchase of food in the blind for resale literally invites adulterations, from very common ones to more unconventional ones</u>**. Hence, <u>it must be clear that Dr. Goldstein's liability theory in this case is predicated upon the significance of buyers and resellers, through the commercial chain, to have safety information about the products that they are buying, so that when they offer it for human consumption, they will be selling a safe product</u>.

Docket No. 378 at 5 (emphasis in original).[2]

---

[2] Dr. Goldstein is not an expert offered to establish medical causation. He opines as to what the Plaintiff's present condition is and Defendants' duty of care. However, as discussed infra, he cannot create a genuine issue of fact.

Under Article 1802 of Puerto Rico's Civil Code, recovery of tort damages requires a showing that the defendant "by act or omission cause[d] damage to another through fault or negligence." P.R. LAWS ANN. tit. 31, § 5141. The three essential elements for general tort claims are: (1) evidence of physical or emotional injury, (2) a negligent or intentional act or omission (the breach of duty element), and (3) a sufficient causal nexus between the injury and defendant's act or omission (in other words, proximate cause). Vazquez-Filippetti v. Banco Popular de Puerto Rico, 504 F.3d 43, 49 (1st Cir. 2007) (citing Torres v. KMart Corp., 233 F.Supp.2d 273, 277–78 (D.P.R. 2002)).

    A.  Causation

"A person can act negligently (i.e. fail to act reasonably to prevent foreseeable harm) and yet escape liability if his negligent act fortuitously does not cause injury to another." Malave-Felix v. Volvo Car Corp., 946 F.2d 967, 971–72 (1st Cir. 1991). "[I]n a negligence action, foreseeability provides the linchpin both for determining the duty of an actor and for determining his liability for the breach of that duty." Malave-Felix., 946 F.2d at 971–72.

"It was the plaintiffs' burden to furnish proof of causation." See Cortés–Irizarry v. Corporación Insular de Seguros, 111 F.3d 184, 190 (1st Cir. 1997) ("Notwithstanding proof of both duty and breach, a plaintiff also must offer competent evidence of causation: To make out causation under Puerto Rico law, a plaintiff must prove, by a fair preponderance of the evidence, that the negligent act or omission was the factor that most likely caused the harm." Martinez-Serrano v. Quality Health Servs. Of Puerto Rico, Inc., 568 F.3d 278, 286 (1st Cir. 2009). "As . . . stated in Marshall v. Perez Arzuaga, 828 F.2d 845 (1st Cir. 1987), proximate cause also is defined in terms of foreseeability . . . A person is liable for injuries that a prudent person reasonably could anticipate . . . . The rule of foreseeability does not require that the precise risk or exact result that occurred should have been foreseen; rather, the essential factor is that a person should have foreseen

consequences of the general kind that occurred." Malave-Felix, 946 F.2d at 971–72 (citations omitted).

### i. *Foreseability*

For purposes of Article 1802, there is a causal relationship between an omission and an injury when the injury was reasonably foreseeable and could have been avoided had the defendant performed the omitted act. Woods-Leber v. Hyatt Hotels of Puerto Rico, Inc., 951 F. Supp. 1028, 1036 (D.P.R. 1996), affd, 124 F.3d 47 (1st Cir. 1997). The norm of foreseeability is that the risk that must be foreseen must be based on probabilities and not on mere possibilities." Id. (quotations omitted).

> The law is clear. Before liability may be imposed, even upon one of the few institutions that owe a duty of protection to their clients, the plaintiff must show that his or her injury was reasonably foreseeable, and the main way to demonstrate foreseeability is to point to similar incidents in the past that the defendant knew or should have known about.

Woods-Leber, 951 F. Supp. at 1038.

### ii. *Proximate Cause*

Packers argues that: 1) Plaintiffs have absolutely no evidence to establish that their alleged negligent omission was the proximate cause of Plaintiffs' damages, and 2) there is no evidence that the shrimp was contaminated with saxitoxin. (Docket No. 364).

*The crux of the parties' arguments:* Plaintiffs' entire case is predicated upon their conclusive argument that: "[t]he cause of the physical damages that Plaintiff experienced on February 19, 2005 and subsequent days was having ingested one of the shrimps that he was served at defendant restaurant El Nuevo Amanecer, which contained a rare toxin known as saxitoxin." (Docket No. 378-1 at 4 ¶ 10). Defendants reject this, arguing that Plaintiffs' theory is unsupported and speculative given that there is no evidence that Plaintiff suffered saxitoxin intoxication. Packers argues that: "there is no document or witness that could demonstrate scientifically that the shrimp

eaten by Plaintiff was a carrier of Saxitoxin or Paralytic Shellfish Poisoning." (Docket No. 365 ¶ 33). The shrimp eaten by Plaintiff was not tested for Saxitoxin nor Paralytic Shellfish Poisoning before or after ingestion. (Docket No. 365 ¶ 34). Plaintiff himself was not tested for Saxitoxin nor Paralytic Shellfish Poisoning before or after ingestion. (Docket No. 365 ¶ 35). Plaintiff's medical records from Hospital Menonita do not mention saxitoxin. (Docket No 365 ¶ 37). The medical diagnosis at Menonita Hospital was Guillian Barre Syndrome. (Docket No. 365 ¶ 38).

Plaintiffs conclusively assert that "[t]he cause of Plaintiff's health conditions was saxitoxin intoxication from the shrimp he ate. (Docket No. 378-1 at 5 ¶ 13). In reaching their conclusion, Plaintiffs contend, that "the diagnosis of the condition caused by saxitoxin, called Paralytic Shellfish Poisoning (PSP), is done clinically and by recent dietary consumption. No laboratory tests were conducted for those purposes on Plaintiff." (Docket No. 378-1 at 5 ¶ 14). Plaintiffs argue that "the only basis for this conclusion is that Plaintiff got intoxicated with saxitoxin by eating a shrimp is that Gonzalez "ate the shrimp [,] [h]e got sick[,] [h]e ended up in the Hospital, [and has] been a paraplegic for years." (Docket No. 365 ¶ 36). According to Plaintiff, at the restaurant he ordered a plate of appetizers that included "fried chicken pieces, some tostones", "mini beef turnovers, cornmeal fritters, mini cordon bleu chicken breasts and jumbo shrimp."

Summary judgment is appropriate if there is no genuine issue as to any material fact and the undisputed facts show that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c)(2). The vocabulary of summary judgment is well-defined. An issue is "genuine" if the evidence of record permits a rational factfinder to resolve it in favor of either party. A fact is "material" if its existence or nonexistence has the potential to change the outcome of the suit. Borges ex rel. S.M.B.W. v. Serrano-Isern, 605 F.3d 1, 4–5 (1st Cir. 2010) (citing Medina–Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990). The moving party bears the initial burden of informing the trial court of the basis for his motion and identifying the portions of the

pleadings, depositions, answers to interrogatories, admissions, and affidavits, if any, that demonstrate the absence of any genuine issue of material fact. Celotex Corp., 477 U.S. at 323. Once the moving party has accomplished this feat, the burden shifts to the nonmoving party, who must, with respect to each issue on which she would bear the burden of proof at trial, demonstrate that a trier of fact could reasonably resolve that issue in her favor. DeNovellis v. Shalala, 124 F.3d 298, 306 (1st Cir. 1997).

Adopting the plaintiffs' version of all controverted facts (but not, however, giving credence to "conclusory allegations, improbable inferences, [or] unsupported speculation," Martinez v. Colon, 54 F.3d 980, 984 (1st Cir. 1995) (quotations omitted). A party moving for summary judgment bears the initial burden of demonstrating the lack of evidence to support the non-moving party's case. Celotex, 477 U.S. at 325. "The movant must aver an absence of evidence to support the nonmoving party's case." Cedeno Nieves v. Aerostar Airport Holdings LLC, 251 F. Supp. 3d 360, 369–70 (D.P.R. 2017).

The Court finds that the record is devoid of evidence to support Plaintiffs' claims against Defendants. Plaintiffs must present evidence establishing a sufficient *causal nexus* between his injury and Defendants' purported act or omission. See Vazquez-Filippetti, 504 F.3d at 49. The record reveals no evidence connecting Plaintiff's deteriorating health condition to any act or omission by Defendants. The record contains no significantly probative evidence on the issue of causation. Plaintiffs have no scientific evidence to support their allegation that Plaintiff suffered saxitoxin intoxication. Without such an evidentiary predicate, the jury has no legally acceptable basis for finding Defendants liable for Plaintiffs' damages. Plaintiffs do not advance a specific explanation as to how Plaintiff suffered from saxitoxin intoxication. Borges ex rel. S.M.B.W, 605 F.3d at 9; see also Martinez-Serrano v. Quality Health Servs. Of Puerto Rico, Inc., 568 F.3d 278, 286–87 (1st Cir. 2009).

A plaintiff must provide "evidence sufficient for 'a fair-minded jury [to] return a verdict' in [its] favor. Anderson, 477 U.S. at 252. "[C]onclusory allegations, improbable inferences, and unsupported speculation" will not do. Without proof of saxitoxin intoxication, a jury cannot find that Defendants, as importers, resellers and distributors of seafood —beached their alleged duty to investigate the background and safety of their food products and said omission caused Plaintiff's damages. Medina–Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir.1990); see also Soto-Padro v. Pub. Bldgs. Auth., 675 F.3d 1, 5 (1st Cir. 2012).

Insofar as there is no scientific evidence to establish that the shrimp that Plaintiff ate at the Restaurant was contaminated with saxitoxin, and because there is *lack of evidence* to establish that Plaintiff suffered that day from paralytic shellfish poisoning due to saxitoxin, there is no evidence from which a factfinder could conclude, *without rank speculation*, that plaintiff's injuries were a proximate cause of Defendants' negligent act or omission. Cedeno Nieves, 251 F. Supp. 3d at 369–70.

In the instant case, what is undisputed is that Plaintiff went to Restaurante el Nuevo Amanecer, ate shrimp, and shortly thereafter felt ill, and was taken to the hospital. Attributing liability to Defendants without any evidence as to whether Plaintiff suffered saxitoxin intoxication, or whether the shrimp he ate at Restarante El Amanecer was a carrier of saxitoxin —would require entirely unsupported speculation. Summary judgment is appropriate where plaintiffs' case rests upon "conclusory allegations, improbable inferences, and unsupported speculation." Forestier Fradera, 440 F.3d at 21 (quoting Benoit, 331 F.3d at 173).

Even if the record contained sufficient evidence for a jury to conclude Defendants breached the duty of care, Plaintiffs' claim fails because there is no evidence from which a reasonably jury could find proximate cause. Therefore, Defendants are entitled to judgment as a matter of law on Plaintiffs' Article 1802 negligence claim.

CIVIL NO. 14-1507 (GAG)

IV.     Conclusion

For the reasons stated above, the Court **GRANTS** Defendants' Motions for Summary Judgment. (Docket Nos. 356, 359 and 364).    Plaintiffs' claims are hereby **DISMISSED** with prejudice. Judgment shall be entered accordingly.

**SO ORDERED.**

In San Juan, Puerto Rico this 25th day of March, 2019.

*s/ Gustavo A. Gelpí*
GUSTAVO A. GELPI
United States District Judge