UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

LUIS GONZÁLEZ CABÁN, ET. AL.

**Plaintiffs**

v.

JR SEAFOOD, INC., ET. AL.

**Defendants**

CIVIL NO. 14-1507-GAG

**MOTION TO RECONSIDER, ALTER AND AMEND
"OPINION AND ORDER", BEFORE ERRONEOUS JUDGMENT IS ENTERED**

**TO THE HONORABLE COURT:**

**COME NOW** Plaintiffs, represented by the undersigned attorneys, and most respectfully state, allege, and pray:

1. It is with the <u>utmost and highest respect</u> that plaintiffs appear today before this Honorable Court, requesting that it alters, amends and reconsiders the "Opinion and Order" entered at D.E. #426. This request is being made before the entry of the summary judgment that the Court announced in said Order.

<u>Plaintiffs respectfully sustain that this moment provides a timely opportunity for the Court to realize that the decisive conclusion in its Order, about plaintiffs not having evidence to prove that plaintiff Mr. Luis González-Cabán suffered a saxitoxin intoxication, is in plain error.</u>

2. As it stands now, the "Opinion and Order" is based on a judicial conclusion in the field of medicine that is wholly unsupported by the record, while it **fails to even mention the undisputed medical evidence**, <u>from both sides</u>, **that establishes the exact opposite**.

3. Plaintiffs respectfully contend that <u>defendants' constant incorrect and misleading averments in their dispositive motions misled the Honorable Court into misapprehending the facts, thus overlooking the material evidence that is on the record</u>.

4. **The <u>crux</u> of this Honorable Court's summary judgment is that**:

"Insofar as there is no scientific evidence to establish that the shrimp that plaintiff ate at the Restaurant was contaminated with saxitoxin, and because there is lack of evidence to establish that plaintiff suffered that day from paralytic shellfish poisoning due to saxitoxin, there is no evidence from which the factfinder could conclude, *without rank speculation*, that plaintiff's injuries were the proximate cause of defendants' negligent act or omission". (See "Opinion and Order" D.E. #426, at page #11).[1]

The Honorable Court reasoned that in the absence of laboratory saxitoxin testing on the subject shrimp or plaintiff Mr. Luis González-Cabán, and if his hospital medical records did not mention the term saxitoxin, plaintiffs cannot prove that he suffered said intoxication. (See "Opinion and Order", D.E. #426, at page #9).

The Court further affirmed that plaintiffs had instead "<u>conclusively</u>" asserted that the medical diagnosis of Paralytic Shellfish Poisoning (PSP) is done clinically, and by recent dietary consumption. (See "Opinion and Order", at page #9).

5. Plaintiffs very respectfully sustain that this Honorable Court's "Opinion and Order" cannot stand because there is <u>not a single expert testimony, or medical authority on the record, to establish that saxitoxin intoxication is not diagnosed clinically and by recent dietary consumption</u>. On the contrary**, the only medical evidence on the record, both from plaintiffs**

---

[1] Paralytic Shellfish Poisoning is the disease that a person gets from saxitoxin. (See **Exhibit X** of Plaintiffs' "Ominubus Opposition" at D.E. #378, statement by defense food safety expert Dr. Aubrey Mendonca's deposition, at page #10).

**and defendants, affirm that the diagnosis of saxitoxin intoxication or PSP is in fact done clinically and by recent dietary consumption**. Let us see.

6. Defendants' medical expert, Dr. José Alcalá, **categorically** acknowledged in his report that:

> "PSP's medical diagnosis is based on observed symptomatology and recent dietary habits". (See page **Exhibit VIII** of plaintiffs' "Opposition to MSJ", D.E. #378).

**Dr. Alcalá's name, and his statement** acknowledging the medical method to diagnose PSP, are **not mentioned in this Court's "Opinion and Order"**, even though it goes against the Court's own conclusion on the matter. At no time did Dr. Alcalá indicate that lab testing or other methods must be used to reach a PSP diagnosis. His opinion confirms that of **plaintiffs' own medical expert, Dr. Pedro Rodríguez, who is also not mentioned in the Court's "Opinion and Order"**. He specifically asserted that any further scientific testing is unnecessary to diagnose PSP. (See **Exhibit VII** at D.E. #378).[2]

As a mater of reality, there is not a single piece of medical evidence on the record to establish that the medical diagnosis of saxitoxin intoxication requires a different method as the one affirmed by Dr. Alcalá and Dr. Rodríguez, such as laboratory testing.

---

[2] It is important to add here that plaintiffs had made it clear that their expert toxicologist, Dr. Paul Goldstein, deferred to physician experts on the issue of medical causation and diagnosis, because he does not posses the expertise to establish it. This was acknowledged by this Court at page #6, footnote #2, of its "Opinion and Order". Hence, when this Court later cited Dr. Goldstein's informal, general observations in support of a medical PSP diagnosis at page #9, while omitting any mention of the actual medical experts' opinion, it **used the wrong expert to analyze the medical causation issue**. The citation of the general remarks in the field of medicine by non-medical expert Dr. Goldstein, whom the Court had already stated had no medical expertise, only served to give the impression that plaintiffs' medical causation allegations relied on speculations by an unqualified expert. This is the type of misrepresentation that defendants constantly made in their motions.

Hence, **the "Opinion and Order" by this Honorable Court imposes on plaintiffs the burden of proving the PSP medical diagnosis through a method that medicine itself, and defendants' medical expert, do not require**.

If there is no medical evidence on the record to require a different method to diagnose PSP, plaintiffs respectfully affirm that a court, on its own, could not speculate on the use of some other specialized medical diagnostic process, especially when the method unanimously proffered by all the medical experts does not require it.

7. Furthermore, while the **"Opinion and Order"** is critical about the alleged absence of certain medical testing on plaintiff, it also **omits mentioning that plaintiff was submitted to extensive rule-out tests**.

**The "Opinion and Order" does not mention that Dr. José Carlo, defense expert in neuromuscular diseases for defendants**, actually affirmed in his report that plaintiffs' symptoms were "**compatible**" **with saxitoxin intoxication** from the shrimp he ate, and that "**extensive testing**" done on Mr. González-Cabán ruled out other possibilities. So lab testing and alike were done, and these excluded other causative alternatives, narrowing down the diagnostic spectrum. After reviewing the records and tests, Dr. Carlo was not able to posit that plaintiff suffered from Guillen-Barre syndrome, as was preliminarily suspected during plaintiff's original hospitalization. On the contrary, Dr. Carlo clarified that: "No other central nervous or peripheral nerve condition was identified". No expert in this case has ever opined that plaintiff suffered from Guillen-Barre, and yet this condition is specifically mentioned in the Court's "Opinion and Order". Dr. Carlo affirmed that Dr. Rodríguez' opinion actually provides a **"plausible" explanation** for Mr. González-Cabán's lesions. (See **Exhibit V** of plaintiffs' D.E. #378**,**

pages #4 and #5 of Dr. Carlo's report). Even **Dr. Steven Otwell, food safety expert for defendants**, affirmed that he believes that what happened to Mr. González Cabán "**seems to be an intoxication**", as opposed to alternatives like bacterial contamination. (See **Exhibit VI** of plaintiffs' D.E. #378**,** deposition of Dr. Otwell, at pages #14 and #134). **And while Mr. González-Cabán's medical records at Menonita Hospital do not mention saxitoxin by name, they do refer to "shellfish intoxication" on numerous occasions, over and over**. (See **Exhibit IV** at plaintiffs' D.E. #378).

None of these experts, and none of this medical information, are mentioned in the Court's "Opinion and Order", *at all*.

8.  If someone unfamiliar with the record were to read the Honorable Court's "Opinion and Order", he/she would believe that plaintiffs did not retain a medical expert in this case, and there was no medical evidence on the record, to establish PSP medical causation. The reality is quite the opposite. It is not in every case that defendants' medical experts actually confirm or support plaintiffs' medical expert's causation theory, and yet, this is what happened in this case.

9.  **Defendants had all the resources in the world to hire a medical expert to categorically discard plaintiff's saxitoxin poisoning allegations, and discover another causative condition**. Yet, **defendants' own experts could not bring themselves to raise such an argument**, **and ended up mostly confirming plaintiffs' expert allegations**. The admissions by said expert physicians against the self-interests of their clients are an eloquent confirmation about the fact that Mr. González-Cabán sits on a wheelchair today because of saxitoxin intoxication.

10.  As a collateral, practical consideration, the existing "Opinion and Order" by this Honorable Court has significant implications on everyday litigation pertaining to medical matters, affecting both party plaintiffs, and party defendants.

For example, in a medical malpractice case, a defendant physician, or his/her expert, would not be able to validly assert that a correct diagnosis was reached on a patient if the condition in question is supposed to be diagnosed by symptoms, as per the medical standards, unless lab work and other testing was done on the patient. By the same token, in claims involving conditions like saxitoxin, which run out of the body in a few hours, plaintiffs might as well not bother filing a claim unless a certain lab testing or other such tests were done, even if all experts agree that the diagnosis could be made without them.

11.  **Through our filings, plaintiffs recurrently tried to advise this Honorable Court that defendants' level of misleading statements in their dispositive motions was simply off the charts**. Untrue affirmations were brazenly asserted, over and over. **A straw man fallacy was carefully created to discredit plaintiffs' case**. This is why plaintiffs totally understand that this Honorable Court might have misapprehended the evidence and plaintiffs' positions, issuing a dispositive "Opinion and Order" under the wrong factual impressions.

12.  Now that plaintiffs have respectfully brought this situation to the attention of the Honorable Court, it has the vehicle to prevent manifest injustice when a party's position, or the facts, are misapprehended: Federal Rule of Civil Procedure 59(e). See Brook Village North Assoc. v. General Electric Company, 686 F.2d 66, 74 at footnote 7 (1st Cir. 1982); Rivera Delgado v. Chardón, 2017 WL 4122585 *2. Plaintiffs respectfully request this Honorable Court to use FRCP 59(e) to timely vacate its "Opinion and Order", and avoid an unjust disposition of this case

via summary judgment.

13. The entry summary judgment is indeed an extraordinary remedy, for extraordinary circumstances. It goes without saying that in a summary judgment evaluation:

> "There is '**no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails, no room for the judge to superimpose his own ideas of probability and likelihood**….'. Rivera Marrero v. Hospital Hermanos Meléndez, 253 F. Supp 2d 179, 186-187 (D. Puerto Rico 2003).

This Honorable Court has cited the longstanding jurisprudence that requires <u>all doubts and inferences to be made for the non-moving party</u> in a summary judgment process. See Rivera Marrero v. Hospital Hermanos Meléndez, 253 F. Supp. 2d 179, 186-187 (D. Puerto Rico 2003), citing Poller v. Columbia Broadcasting System, 368 U.S. 464, 473 (1982). If this basic principle is to be upheld, the unanimous, uncontested medical affirmations by physicians in a case, stating how to diagnose a medical condition, must be acknowledged. **Plaintiffs, defendants, or the Court, do not posses the expertise to discard their expert medical statements and, on their own, come up with other tests or requirements supposedly needed to prove the medical diagnosis**.

Finally, it is worth noting, again, that <u>the applicable evidentiary standard to prove the elements of a Puerto Rico torts case is **preponderance of the evidence**, and no plaintiff is obligated to prove their torts case with mathematical certainty, which is rarely possible in these types of actions</u>, as has been held by the Puerto Rico Supreme Court. See Castro v. Payco Inc., 75 PRR 59 (1953); Zambrana v. Hosp. Santo Asilo de Damas, 109 DPR 517 (1980); Rivera v. ELA, 99 PRR 864 (1971).

**The uncontested medical evidence on record, confirmed by defendants' own medical experts, easily surpasses the minimal preponderance-of-the-evidence criteria**. **The evidence is the evidence.**

14. As the Honorable Supreme Court of the United States has established, "<u>**Trial by affidavit** is no substitute for trial by jury</u> which so long has been **the hallmark of 'even handed justice."** Poller v. C.B.S., 368 U.S. at 473, 82 S. Ct. at 491., <u>supra</u>. "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence". See <u>Torres v. Mennonite General Hospital Inc.</u>, 988 F. Supp. 2d, 180, at page 184 (D. Puerto Rico 2013).

15. <u>**Plaintiffs are simply coming before this Honorable Court to ask for their day in Court, so that it will be a jury of their peers, and not a cold piece of paper, who decides if they should prevail in this case. We respectfully assert, respectfully, that Mr. González-Cabán is at least entitled to his trial**</u>.

**WHEREFORE**, given the circumstances shown, plaintiffs respectfully request this Honorable Court to alter, amend, reconsider and set aside its "Opinion and Order" at D.E. #426.

RESPECTFULLY SUBMITTED.

**I HEREBY CERTIFY:** That on this same date I have served a true copy of this document to all counsel on record through the ECF system of this Honorable Court.

AT SAN JUAN, PUERTO RICO, ON MARCH 28TH, 2019.

*S/JAIME F. AGRAIT LLADÓ*
USDC No. 207012
**AGRAIT-LLADÓ LAW FIRM L.L.C.**
P.O. BOX 195193
SAN JUAN P.R. 00919-5193
Tel.(787)753-7130
Fax. (787)763-1594
E-mail: JFAgraitLaw@aol.com